UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In Re:

WILLIAM W. MORRIS and
JACQUELINE L. MORRIS,

        Debtors.

_____/

Case No. 11-07682-swd
Chapter 7; Filed 07/19/2011

HONORABLE SCOTT W. DALES
Bankruptcy Judge

KELLOGG COMMUNITY FEDERAL CREDIT UNION'S OBJECTION TO
TRUSTEE'S MOTION TO SELL INTEREST IN LAND CONTRACT AND PROPERTY

Kellogg Community Federal Credit Union ("Credit Union"), through its attorneys, Mika Meyers Beckett & Jones PLC, objects to Steven L. Langeland's, Chapter 7 Trustee (the "Trustee"), July 23, 2012 Amended Motion to Sell Interest in Land Contract, Property and Cause of Action (948 North Raymond, Battle Creek, Michigan 49014) for the reasons set forth below:

1. The Debtors filed their voluntary Chapter 7 Petition on July 19, 2011.

2. Based on proofs of claim filed as of this date, the Credit Union's unsecured claim constitutes approximately 98% of all unsecured claims filed.

3. The Trustee's Motion seeks Court authority for the Trustee's sale of: (a) the estate's interest in a Land Contract; (b) the estate's interest in the property described in the Land Contract; (c) the estate's right to receive payments under the Land Contract; and (d) the estate's interest in all causes of action to reform the Land Contract, all for $20,000.

4. The Debtors' Schedule B lists the Land Contract receivable as an asset of the estate, and claims a balance of $441,376.45 "on the building" and $48,941.00 "on the liquor license".

{01204670 1 }

5. The Land Contract is a September 24, 2007 $500,000 Land Contract between Hots, Inc., the land contract seller, and HOA Enterprises, Inc, the land contract buyer (attached at Tab A).[1] Upon information and belief, as of the September 24, 2007 date of the Land Contract, William Morris was the sole shareholder of Hots, Inc. Further, upon information and belief, Steven Titus was the sole shareholder of HOA Enterprises, Inc.

6. The $500,000 Land Contract relates to a "gentlemen's club" located at 948 North Raymond, Battle Creek, Michigan 49014, with an SEV of $112,650 (see attached Tab B).

7. Under the terms of the $500,000 Land Contract, HOA Enterprises, Inc. paid Hots, Inc. $50,000 upon execution. The $450,000 balance was payable at 11% interest in monthly payments of $4,285.46, a 30-year amortization. Initially, the $500,000 Land Contract included a three-year balloon, i.e., the entire outstanding balance of the $500,000 Land Contract became due and payable on September 24, 2010. By March 2010 and March 2011 Amendments, the balloon payment date was extended to September 24, 2025, and the interest rate reduced to 7%.[2]

8. Upon information and belief, all pre-petition Land Contract payments were made directly to William Morris for the almost four-year period prior to the Petition Date.

9. Further, the Trustee's Motion suggests that post-petition payments were made either to the Trustee or Morris until HOA Enterprises, Inc. ceased making payment in January 2012. Paragraph 4 of the Trustee's Motion asserts that the $500,000 Land Contract is in arrears for non-payment of the January 24, 2012 payment and payments thereafter.

---

[1] The Land Contract was amended in March 2010 and March 2011. Both amendments are also attached at Tab A.

[2] The March 2011 Amendment also provides for a 40% discount if paid in full by March 23, 2012, with a right to extend the deadline for an annual fee of "5%".

{01204670 1 }

10. Even though Hots, Inc. was the seller under the $500,000 Land Contract, the Land Contract buyer made payments directly to Morris and the Trustee, suggesting that Hots, Inc. assigned to Morris all rights to receive payments under the $500,000 Land Contract.

11. The Trustee's Motion seeks Court authority for the Trustee's sale of the estate's right to receive the $441,376.45 balance on the $500,000 Land Contract for $20,000.

12. The Trustee's Motion to sell for $20,000 apparently is based on his assessment that the $500,000 Land Contract documents are flawed and must be reformed.

13. Paragraph 11 of the Trustee's Motion asserts that "the shareholder of Hots, Inc. and the shareholder of [HOA Enterprises, Inc.] are the same person", i.e., Titus. The Trustee's claim is based on the apparent fact that, at the same time the September 24, 2007 $500,000 Land Contract was executed, William Morris, the sole shareholder of Hots, Inc., and Steven Titus entered into a stock sales agreement, providing for Morris' transfer to Titus of all of the stock in Hots, Inc. for a purchase price of $50,000, with $100 down.

14. There are two "versions" of the stock sales agreement, which are attached at Tabs C and D. Under each "version", the $49,900 purchase price balance was payable at 11% interest in monthly payments of $475.21, a 30-year amortization. Like the Land Contract, the agreement provided for a three-year balloon, i.e., the balance outstanding would be due and payable on September 24, 2010.

15. Unlike the Land Contract, though, the stock sales agreement provided for a closing following MLCC approval of the stock transfer, and referenced a note, stock pledge, and security agreement relating thereto.[3]

---

[3] A "flow chart" of the land contract and stock purchase transaction is attached at Tab E.

16. The undersigned contacted the MLCC and learned that the MLCC did not approve the transfer of Hots, Inc.'s stock from Morris to Titus until April, 2009.[4]

17. Based on the undersigned's conversations with the Trustee and the Trustee's attorney, it is the Credit Union's belief that the Trustee does not have a copy of the closing agenda or other closing documents relating to the $500,000 Land Contract nor does the Trustee have the note, stock pledge, and security agreement described in one of the two "versions" of the stock sales agreement, or any assignment of land contract receivable that may have been executed in April 2009 when the stock sale was completed.

18. Based on the documents now in the Trustee's possession, the transaction is absurd. Why would Morris enter into a $500,000 Land Contract with a $450,000 balance on behalf of Hots, Inc. and, at the same time, transfer all of his stock in Hots, Inc. to the shareholder of the land contract buyer, effectively cutting off his right to receive the Land Contract payments as a distribution from Hots, Inc.?

19. The actual Land Contract monthly installment payment flow best evidences the Land Contract seller and Land Contract buyer's mutual intent that the Debtor receive the benefit of the $550,000 transaction – not Steven Titus, shareholder for the Land Contract buyer.

20. The Trustee does not disagree with this assessment. Paragraph 13 of the Trustee's Motion states:

> "The Trustee believes that the Land Contract was prepared in error, and that it was intended that William W. Morris was the seller under the terms of the Land Contract or the person entitled to payments under the Land Contract. That fact has been

---

[4] This is consistent with the fact that Hots, Inc.'s annual reports filed with the state in February 2008 and February 2009 were signed by Morris, as President. A change of resident agent was not filed until July 20, 2009, listing Titus as President.

4

{01204670 1 }

confirmed by virtue of payments that have been made to William W. Morris under the terms of the Land Contract."

21. The actual payment flow indicates that Hots, Inc. assigned to the Debtor the rights to the Land Contract payment stream, prior to closing on the Morris/Titus stock sales agreement. That missing assignment document would justify the parties' actual flow of payments for the four-year period prior to bankruptcy.

22. In the alternative, as suggested at paragraphs 12 and 13 of the Trustee's Motion, perhaps Hots, Inc. intended to convey the real property to the Debtor, with the Debtor then selling the real property on Land Contract. That scenario would also justify the flow of payments over the four-year period.

23. Even if documents do not exist to support Morris receiving the benefit of the transaction, the prospects of a reformation action are very good.

24. In the alternative, perhaps the stock sale documents signed following MLCC approval of the stock purchase agreement offer the Chapter 7 Trustee a means of generating greater value for the estate without the need for a state court reformation action. For example, if the stock pledge agreement provides that the stock secures both the Land Contract and the $49,900 stock purchase note, the Trustee may notice out a sale of the stock, advising potential bidders that acquisition of the Hots, Inc. stock may entitle the buyer to distribution rights on the $400,000+ balance on the Land Contract.

25. Not until the Trustee has all of the transactional documents can the interest(s) of the bankruptcy estate in the Land Contract receivable be clarified, nor can a buyer of the land contract reformation cause of action assess the likelihood of success of such cause of action.

26. Until the Trustee obtains all of these transactional documents, it is premature for the Trustee to sell the estate's interest in the Land Contract, property, and cause of action.

27. To maximize value of this asset and cause of action, the Trustee should first obtain all of the transactional documents.

WHEREFORE, the Credit Union requests that the Court deny the Trustee's Motion and, pursuant to 11 USC §704(a)(4)[5], require the Trustee to complete his due diligence of the Land Contract and stock transaction, to determine if documents not yet in the Trustee's possession entitle the bankruptcy estate to the stream of Land Contract payments.

                                                   Respectfully submitted,

                                                   MIKA MEYERS BECKETT & JONES, PLC
                                                   Attorneys for Kellogg Community Federal
                                                   Credit Union

Dated: August 3, 2012                        By:   /s/ *Daniel R. Kubiak*
                                                         Daniel R. Kubiak (P31954)
                                                          900 Monroe Avenue NW
                                                          Grand Rapids, MI 49503
                                                          (616) 632-8000
                                                          DKubiak@mmbjlaw.com

---

[5] 11 USC §704(a)(4) provides that the "trustee shall. . . . investigate the financial affairs of the debtor".

{01204670 1 }