5-B



EXHIBIT

A
_____

<u>LAND CONTRACT</u>
CALHOUN COUNTY BAR ASSOCIATION FORM
REVISED APRIL 1984

THIS CONTRACT, made and executed this 24th day of September, 2007, between HOTS, INC., a Michigan corporation, of 544 W. Columbia Avenue, Suite B, Battle Creek, Michigan 49015, hereinafter called "Vendor", and HOA ENTERPRISES, INC., a Michigan corporation, of 365 Avenue A, Battle Creek, Michigan 49015, hereinafter called "Purchaser".

WITNESSETH: That in consideration of the promises hereinafter contained, it is agreed:

1.    <u>Description</u>.  Vendor hereby sells to Purchaser the premises situated in the Township of Emmett, County of Calhoun, Michigan, described as follows:

<u>Parcel 1</u>
Commencing at a point on the Southeasterly line of Raymond Road, distant South 33° West 416.6 feet from the Southwest corner of Lot 1, Block 1 of the recorded plat of Brownlee Park; thence South 77° 40' East 132 feet; thence North 33° East 60 feet; thence South 77° 40' East 168 feet; thence South 33° West 120 feet; thence North 77°40' West 300 feet to the Southeasterly line of Raymond Road; thence North 33° East 60 feet to the place of beginning, being on the Southeast ¼ of Section 5, Town 2 South, Range 7 West, Township of Emmett, Calhoun County, Michigan.

<u>Parcel 2</u>
ALSO: All that part of the Southeast ¼ of Section 5, Town 2 South, Range 7 West, described as follows: Beginning at a point on the East line of said section distant 659.26 feet North of the South line of said section; thence North 77° 40' West 176.55 feet; thence North 33° East parallel with and distant 280.7 feet measured at right angles from the Easterly line of Raymond Road 120 feet; thence South 77° 40' East 107.9 feet to the East line of said section; thence South 00° 51' East along said section line 115.32 feet to the place of beginning. Township of Emmett, Calhoun County, Michigan.

<u>Parcel 3</u>
Part of the Southeast ¼ of Section 5, Town 2 South, Range 7 West, Emmett Township, Calhoun County, Michigan, described as: Beginning at a point on the Southeasterly line of Raymond Road, distant South 33° West 336.6 feet from the Southwest corner of Lot 1, of the recorded Plat of Brownlee Park; thence continuing South 33° West, 80.00 feet along said Southeasterly line of Raymond Road; thence South 77° 40' East, 132 feet; thence North 33° East, 60 feet; thence South 77° 40' East, 168 feet; thence North 74° 00'42" West, 293.54 feet to the point of beginning.

Tax Roll Number: 13-10-005-004-01

2.    <u>Price and Terms of Payment</u>.  Purchaser buys said premises, and agrees to pay therefor the sum of Five Hundred Thousand and 00/100 Dollars ($500,000.00), as follows:  Fifty Thousand and 00/100 Dollars ($50,000.00) down, and the balance in the sum of Four Hundred Fifty Thousand and 00/100 Dollars ($450,000.00), together with interest from date on the whole sum from time to time remaining unpaid at the rate of eleven percent (11%) per annum, shall be paid as follows: Four Thousand Two Hundred Eighty-Five and 46/100 Dollars ($4,285.46) or more thirty (30) days after execution of this Land Contract, and Four Thousand Two Hundred Eighty-Five and 46/100 Dollars ($4,285.46) or more on the same day of each and every month thereafter, with interest on all sums from time to time unpaid to be first deducted from payment and the balance of payment applied upon principal.

The entire unpaid principal balance, together with accrued interest, shall be due and payable three (3) years from the date hereof.

Vendor shall reduce the purchase price by Ten Thousand and 00/100 Dollars ($10,000.00) in the event that Purchaser pays the entire principal balance, plus accrued interest, within six (6) months of

the date of the execution of this Land Contract.

3.  Possession.  Purchaser shall have possession of said premises on the date hereof.

4.  Title of Vendor.  Vendor represents and warrants that except as in this contract otherwise expressly stated, Vendor has a merchantable title to said premises on the date hereof by virtue of a properly executed and recorded deed, subject only to easements and restrictive covenants now of record, if any; and that the Vendor's title is free and clear of all other incumbrances, if any: NONE

5.  Right to Encumber.  Vendor may renew any present mortgage upon said premises, or replace same with a new mortgage thereon containing similar terms during the effective period of this contract. Said renewal and replacement shall create a lien on said premises prior to the rights of Purchaser; or Vendor may place a new mortgage thereon during the effective period of this contract which shall create a lien on said premises prior to the rights of Purchaser; provided: (1) Interest rate therein shall not exceed that herein specified.  (2) Amounts of installments and final payments on said mortgage shall not exceed respectively the corresponding minimum installment payments or final payment stipulated by this contract. (3) Due dates of payments on said mortgage shall not require installment payments or final payment in advance of the time provided for said payments in this contract, nor shall mortgage restrict the time of payments thereon to a date later than is provided for similar payments on this contract.  (4) Such mortgage shall not be in an amount in excess of the balance then owing on this contract.

In such event that Purchaser reduces the amount owing on this contract to an amount equal to that owing by Vendor on any present mortgage on said premises, or on a replacement or new mortgage thereon given in accordance with the terms hereof, then Purchaser shall be entitled to, and shall accept, a warranty deed of said premises, subject to said mortgage, which mortgage Purchaser shall thereon assume and agree to pay.

In the event the Vendor shall fail to pay any sums of money required to be paid by the terms of said mortgage or the note secured thereby, the Purchaser may, at Purchaser's option, make such payments, and all sums so paid shall apply against the next sums due and owing for monthly installments on this contract.

6.  Taxes.  Vendor represents that all 2005 and prior years general property taxes that have heretofore become due and payable upon said lands and all special assessment taxes that have become a lien against said lands, whether payable in installments or otherwise, have been fully paid. The parties acknowledge that there are currently 2006 general property taxes due on the property. The parties further agree that said 2006 general property taxes shall be paid, by Vendor, at the time that Purchaser pays off the balance due on this Contract. 2007 property taxes shall be prorated to the date of the closing, utilizing the most recent available figures in computing the same.

Purchaser agrees to pay when due all other taxes and assessments of every nature that shall become a lien upon the Premises until the purchase price has been paid in full.

7.  Insurance.  Purchaser agrees to procure, and pay for, fire and extended coverage insurance upon all buildings now or hereafter situated on said premises, in such company, and in such amounts, as Vendor shall approve, from the date hereof to the date of delivery to Purchaser of the conveyance of Vendor's interest in said premises.  Said policies of insurance shall correctly state the names of parties in interest to whom loss shall be payable, and shall be delivered upon issuance, to Vendor.  In case of loss or damage as a result of which said insurance proceeds are available, the Purchaser may, within ninety days of said loss or damage, give to the Vendor written notice of Purchaser's election to repair or rebuild the damaged parts of the premises, in which event said insurance proceeds shall be used for such purpose. The balance of said proceeds, if any, which remains after completion of said repairing or rebuilding, or all of said insurance proceeds if the Purchaser elects not to repair or rebuild, shall be applied first towards the satisfaction of any existing defaults, under the terms of this contract and then as a pre-payment upon the principal balance owing, and without penalty, notwithstanding other terms of paragraph two to the contrary.  Contrary to the provisions of paragraph nine, no such pre-payment shall defer the time for payment of any remaining payments required by said paragraph two.  Any surplus of said proceeds in excess of the balance owing hereon shall be paid to the Purchaser.

8.  Right to Add Taxes and Insurance.  Should Purchaser fail to perform his obligation as agreed in paragraph 6 and/or 7 of this contract. Vendor may pay such unpaid tax and/or assessment, and/or insurance premium, and the amount thus expended shall forthwith be added to the balance then unpaid on this contract, and shall become due at once, and shall bear interest at the rate applicable to said balance until paid.

9.  Overpayment.  If Purchaser shall pay more than the minimum stipulated installment at any time, such overpayment shall be considered as advance payment on future installments, and, in event that

Purchaser thereafter fails to make regular payments when due, such prepayment shall be applied to pay installments so unpaid until such pre-payment shall be exhausted.

10.    Waste, Repairs and Improvements.  Until complete performance on his part by Purchaser, said Purchaser shall commit no waste on said premises, and shall keep same in good repair and in as good condition as they are now in.  All buildings and improvements now on said premises, and all improvements hereafter made by the Purchasers to said premises shall remain as security for the performance of this contract and shall be deemed part of the real estate.

11.    Restrictions and Easements.  Valid, presently effective, restrictions and easements now of record, if any, applying to and affecting the use of said premises, are incorporated herein and made a part of this contract by reference, and shall be expected from the warranties of the conveyance to be given Purchaser pursuant to this contract.

12.    Time of Essence and Right to Accelerate.  Time of payment shall be the very essence of this contract.

If any money or any tax or assessment which Purchaser agrees to pay by the terms of this contract shall remain due and unpaid for thirty (30) days, Vendor may foreclose an action to enforce this contract or forfeit or foreclose same and declare the whole balance then due and owing hereon due and payable forthwith, when this is not prohibited by law in the court in which the action is brought.

13.    Conveyance.  When all sums required by this contract is to be paid to the Vendor have been fully paid, the Vendor shall convey said premises to the Purchaser by warranty deed, containing exceptions to the warranties as to the easements, restrictive covenants, or incumbrances subject to which the Purchaser has agreed to take or to assume.  Such deed may also except from its warranties such liens, incumbrances, or claims of others, if any, arising by reason of the acts or neglects of the Purchaser after the date of this contract.  In the event Probate Court fiduciaries, or trustees are then acting as Vendor, said premises may be conveyed by proper covenant deed.

14.    Abstract or other Guaranty of Title.  Purchaser acknowledges that it has been furnished a title insurance policy simultaneously with the execution of this Land Contract in full compliance with all title requirements as herein set forth.  Vendor shall not be liable for any additional abstracting or title insurance expense other than that required by Vendor's acts or negligence from and after the date hereof.

15.    Assignment.  Purchaser shall not sell, assign or convey said premises without the prior written consent of Vendor.  Upon assignment of the interest of any party to this contract, a copy of such assignment shall be forthwith served upon the then owner, or owners, of the other interest, or interests, in said contract, which copy shall contain the mailing address of the assignee.  Until said copy is so served an assignee of an interest herein shall acquire no rights under this contract as against parties hereto other than the assignor.  Conveyance of said premises by Vendor, and assignment of Vendor's interest in this contract, shall not constitute a rescission or grounds for a rescission thereof.

16.    Default.

A.    Cross-Default Clause.  The parties acknowledge that Stephen J. Titus, individually, has entered into a certain Stock Sales Agreement dated the 17th day of September, 2007, by and between William W. Morris, Hots, Inc., as Sellers, and Stephen J. Titus, as Buyer.  Stephen J. Titus and Purchaser, by the execution hereof, agree that a breach of the terms and conditions of the Stock Sales Agreement, and any collateral documents related thereto, shall also be considered a breach of this Contract.  Further, a breach of this Contract shall be considered a breach of the Stock Sales Agreement dated September 17, 2007, as well as any collateral documents related thereto.

B.    Upon default by the Purchaser in making any of the payments required by this contract, or in any of the other covenants or agreements required by this contract to be performed by the Purchaser, the Vendor may:  (a) bring an action against the Purchaser at law for the balance of the agreed purchase price, or for any and all past due sums due and owing on said land contract; (b) foreclose this contract by action in the circuit court; (c) terminate or forfeit this land contract by summary proceedings in the district court, in the manner and with the remedies and effect now provided by Act 120, Michigan Public Acts, 1972, [M.S.A. 27A5701 et seq.) or any future amendments thereto; and (d) declare this contract void and of no further force or effect, peacefully take possession of the property without notice and retain the property and all payments and improvements made therein, as stipulated damages for Purchaser's default.

17.    Service of Notice and Proof of Service.  Service of said copy of an assignment and of any notice necessary to enforce the rights of any party hereto, shall be sufficient (1) if served personally upon the other parties to this contract, or (2) if served by ordinary first class mail addressed to such other parties

3

at their actual addresses, or at the address given in this contract for them, or if they are assignee, at the address given for them in the copy of assignment, served as above provided.

Proof of mailing of notices as provided above shall constitute proof of service of such notices, as of one day after the date of mailing. If no address has been given to Vendor by the then holder of Purchaser's interest, said notices shall be mailed to Purchaser or his assignee at the mailing address of the premises described in Paragraph 1 above.

18.    Novation. No assignment of this contract, payment by or acceptance of payments from a person not a party hereto, nor other act of any kind shall operate to release the personal liability of Vendor or Purchaser under this contract, nor shall such acts constitute a novation and operate to create a personal liability on any assignee of the Vendor's or Purchaser's interest therein, unless such release and assumption of liability shall be specifically agreed in writing, signed by the party releasing such personal liability and by the party assuming such obligation.

19.    Definitions and Application. The terms of this contract shall apply to, and bind, the heirs, executors, administrators, assigns, successors, survivors, and all other persons claiming any rights in said premises through or under the original parties hereto. The terms "Vendor" and "Purchaser" shall include masculine, feminine, or neuter parties, in the singular and plural.

20.    Costs for Notices. Purchaser agrees that, in the event Vendor causes to be prepared and served any notices for the purpose of enforcing Vendor's rights under this contract in relation to acceleration of the balance owing hereunder, and/or forfeiture of the rights of Purchasers hereunder, Purchasers shall pay the actual costs, expenses and attorney fees for the preparation and/or service of said notices, all of which shall be added to the principal balance owing hereunder, and shall be immediately due and payable. Purchaser further agrees that the reimbursement of Vendor for such expenses, costs and attorney fees shall be made a condition to reinstatement and/or redemption of the rights of Purchaser hereunder, and shall be so designed in any notices and/or judgments which may be executed or entered to enforce the rights of Vendor hereunder.

21.    Purchaser acknowledges that he is purchasing the above-described premises, including all structures thereon, in an "as is" condition without any warranties either express or implied.

HOTS, INC., a Michigan corporation

By: _____

Its:    William W. Morris
       President


HOA ENTERPRISES, INC.,
a Michigan corporation

By: _____

Its:    Stephen J. Titus
       President

       _____
       Stephen J. Titus, individually


STATE OF MICHIGAN        )
                         ) SS.
COUNTY OF CALHOUN        )

On this 24th day of September, 2007, before me, a Notary Public in and for said County, personally appeared William W. Morris, as President of Hots, Inc., a Michigan corporation, to me known to be the same person described in and who executed the foregoing instrument and who acknowledged to me that he executed the same as his free and voluntary act and deed.

_____
Donald H. Dickerson, Notary Public
State of Michigan, County of Calhoun
My Commission Expires: 04-25-2008
Acting in the County of Calhoun

4

STATE OF MICHIGAN    )
                         ) SS.
COUNTY OF CALHOUN    )

On this 24th day of September, 2007, before me, a Notary Public in and for said County, personally appeared Stephen J. Titus, as President of HOA Enterprises, Inc., a Michigan corporation, to me known to be the same person described in and who executed the foregoing instrument and who acknowledged to me that he executed the same as his free and voluntary act and deed.

Donald H. Dickerson, Notary Public
State of Michigan, County of Calhoun
My Commission Expires: 04-25-2008
Acting in the County of Calhoun

STATE OF MICHIGAN    )
                         ) SS.
COUNTY OF CALHOUN    )

The foregoing instrument was acknowledged before me on September 24, 2007, by Stephen J. Titus, individually.

Donald H. Dickerson, Notary Public
State of Michigan, County of Calhoun
My Commission Expires: 04-25-2008
Acting in the County of Calhoun

This Instrument Prepared By:
Schroeder, DeGraw, Kendall,
Mayhall, DeGraw & Dickerson, PLLC
By: Donald H. Dickerson
203 East Michigan Avenue
Marshall, Michigan 49068
(269) 781-9851
Land Description Checked By: _kvs.bb_

5

## AMENDMENT TO LAND CONTRACT

WHEREAS, HOTS, INC., a Michigan corporation, of 948 North Raymond Road, Battle Creek, Michigan 49014, (Vendor) and HOA ENTERPRISES, INC., a Michigan Corporation, of 111 South Main Street, Climax, Michigan 49034, (Purchaser), entered into a land contract dated September 24, 2007.

WHEREAS, the parties now desire to amend section two of the land contract as follows:

NOW THEREFORE, it is mutually agreed as follows:

1. Paragraph two of the land contract provided that the entire purchase price shall be paid in full, together with accrued interest, on or before September 24, 2010.

2. For valid consideration, which is acknowledged between the parties, the Vendor and Purchaser have agreed to modify paragraph two to the extent that the full purchase price shall now be due on or before September 24, 2015.

All other provisions of the original land contact that are not inconsistent with this amendment shall remain in full force and effect.

Vendor:

HOTS, INC., a Michigan corporation

By:_____          Date: 3-2-10
    William Morris

Purchaser:

HOA ENTERPRISES, INC.
A Michigan corporation

By:_____          Date: 3-21-10
    Stephen J. Titus

By:_____          Date: 3-21-10
    Witnessed by

# AMENDMENT TO LAND CONTRACT

WHERAS, HOTS, INC., a Michigan corporation, of 948 North Raymond Road, Battle Creek, Michigan 49014 (Vendor) and HOA ENTERPRISES, INC., a Michigan Corporation, of 111 South Main Street, Climax, Michigan 49034, (Purchaser), entered a land contract dated September 24, 2007.

WHERAS, The parties now desire to add to the land contract as follows:

NOW THEREFORE, it is mutually agreed as follows:

1. Hots, INC., Made a payment of 9,000 (Nine Thousand dollars) on March 23, 2011 and there will be no payment due for December of 2011.
2. There will be a 40% (Forty Percent) Discount off the total amount of the land contract if paid in full by March 23, 2012.
3. If part (2) cannot be meet by March23, 2012 there can be an extension for the sum of 5% per year to extend it.
4. A. Paragraph two of the land contract provided that the entire purchase price shall be paid in full, together with accrued interest, on or before September 24, 2010.

    B. Paragraph two in the first amendment to the land contract extends the contract and additional five years to become due on September 24, 2015.

    C. In this amendment it would extend the contract an additional ten years making it due on September 24, 2025.

6. Paragraph two of the land contract provided that the original interest rate was at 11% (eleven percent) in this amendment as of January 1, 2012 the interest rate shall be changed to 7% (seven percent) for the length of the entire contract.

All other provisions of the original land contract that are not inconsistent with this amendment shall remain in full force and effect.

If any part of this amendment does not follow federal, state or local laws and or guidelines this amendment is null and void.

Vendor:

HOTS, INC., a Michigan Corporation

By:_____                    Date 3-23-11

    William Morris

Purchaser:

HOA ENTERPRISES, INC.,

By:_____                    Date 3-23-11



**COPY**

## STOCK SALES AGREEMENT

THIS AGREEMENT, made and entered into this 24th day of September, 2007, by and between WILLIAM W. MORRIS, of 544 W. Columbia Avenue, Suite B, Battle Creek, Michigan 49015, ("Morris"), and HOTS, INC., a Michigan corporation, of 544 W. Columbia Avenue, Suite B, Battle Creek, Michigan 49015, ("Hots"), both hereinafter referred to as collectively as "Sellers", and STEPHEN J. TITUS, of 365 Avenue A, Battle Creek, Michigan 49015, hereinafter referred to as "Buyer".

WHEREAS, Morris is currently the owner of one hundred (100) shares of common stock of Hots, represented by Certificate No. 1, dated October 30, 2002, hereinafter referred to as the "Stock", and

WHEREAS, Hots is currently the owner of an on-premises, Class-C, SDM Michigan Liquor License, with Sunday sales and dance/entertainment and topless activity permits, and

WHEREAS, Hots is currently the owner of the business, equipment and inventory commonly known as Hots, located at 948 N. Raymond Road, Battle Creek, Michigan 49014, and

WHEREAS, Morris desires to sell his Stock to Buyer, and Buyer desires to purchase Morris's Stock.

NOW, THEREFORE, BE IT AGREED AS FOLLOWS:

1.    <u>Sale of Stock</u>.  Morris shall all of his Stock, and Buyer shall buy of Morris's Stock, for the sum of Fifty Thousand and 00/100 Dollars ($50,000.00).

2.    <u>Assets Included in the Sale</u>.  The consideration for the purchase price is all of Morris's Stock in the corporation known as Hots, Inc.

3.    <u>Purchase Price</u>.  The purchase price to be paid by Buyer to Morris shall be as follows: Fifty Thousand and 00/100 Dollars ($50,000.00).

1

4.    Payment of Purchase Price.  Consideration for this Agreement shall be the mutual promises of the parties hereto, and the purchase price shall be paid in the following manner: Buyer agrees to pay the sum of One Hundred and 00/100 Dollars ($100.00) on or before the date hereof, receipt of which is hereby acknowledged.  The balance of the purchase price is Forty-Nine Thousand Nine Hundred and 00/100 Dollars ($49,900.00), together with interest from the date on the whole sum from time to time remaining unpaid at the rate of eleven percent (11%) per annum, shall be paid as follows:  Four Hundred Seventy-Five and 21/100 Dollars ($475.21) or more one (1) month from the date of closing and a like amount of Four Hundred Seventy-Five and 21/100 Dollars ($475.21) on the same date of each and every month thereafter.  Interest accrued on all sums from time to time unpaid to be first deducted from the payment, and the balance of payment applied upon principal.  To the contrary notwithstanding, the entire principal balance, plus accrued interest, shall be due and payable three (3) years from the date of closing.

The unpaid portion of the purchase price shall be represented by a Promissory Note and secured by a pledge of stock in the form of a Stock Pledge.

5.    Corporate Income.  Morris hereby waives all rights to any and all past, present and future corporate dividends and/or income.

6.    Closing.  The closing of the transaction shall take place on or before twenty (20) days after the Michigan Liquor Control Commission discloses that it will approve of Buyer, as a stockholder of Hots, provided, however, that the closing will take place on or before February 15, 2008.  The parties may mutually agree to extend said closing date.  The closing shall take place at the law offices of Schroeder, DeGraw, Kendall, Mayhall, DeGraw & Dickerson, PLLC, 203 East Michigan Avenue, Marshall, Michigan.  The exact closing date shall

2

be determined by the Buyer so long as it is before this date.  Notice shall be given to Morris at least ten (10) days before the proposed date of closing as to the time closing.

    7.    <u>Representation by Sellers</u>.  Sellers warrant and represent the following:

    a.    That Sellers are the owners of and have good and marketable title to all the business assets, free and clear of all encumbrances, liens, claims or liabilities of any nature whatsoever, except as herein otherwise specified.

    b.    They have paid, or will pay, all Federal, State and local income, profit, sales, use, occupation, property, excise, social security, unemployment compensation, and other taxes to date.

    c.    They have entered into no contract to sell or mortgage the business or any portion thereof.

    d.    They have entered into no contracts relating to the business, except in the ordinary course of business.

    e.    There are no judgments, liens, actions, or proceedings pending against them in any Court.

    8.    <u>Covenants of Sellers</u>.  The Sellers covenant to the best of their knowledge with Buyer as follows:

    a.    <u>Sellers' Title to Stock</u>.  Sellers warrant that they have good, absolute and marketable title to the Stock, free and clear of all liens, claims, encumbrances and restrictions of any kind, and Sellers have the unrestricted right, power and authority to sell, transfer, and assign the Stock pursuant to this Agreement.

3



b.     All Federal, State and local income, profit, franchise, sales, use, occupation, property, excise, social security, unemployment compensation and other taxes to date of closing shall be paid by Sellers.

c.     Simultaneously herewith, Sellers will submit to Buyer a verified list of the names, addresses and amounts of indebtedness to each of its creditors.

d.     No judgments, liens, encumbrances, claims or liabilities of any nature whatsoever will be outstanding at the time of the closing, against Sellers or against the business to be sold to Buyer, as hereinabove set forth.

e.     The Sellers will employ all actions necessary to effectively permit and assist Buyer with obtaining approval from the Michigan Liquor Control Commission of Buyer of a new shareholder.

d.     From the date of this Agreement until the closing date:

(1)     Sellers will continue to maintain all the property herein sold in its present condition.

(2)     Sellers shall continue to maintain in full force and effect all policies of insurance in effect on the date of this Agreement, and the risk of loss between the date hereof and the date of closing shall be borne by Sellers.

(3)     Sellers will give to Buyer and its representative full access to all of the property herein sold and to all of Sellers' records and affairs pertinent to the current operation of Sellers' business in Calhoun County, Michigan.

9.     <u>Morris' Resignation as to Director and Officer</u>. Morris shall deliver to Buyer at closing the written resignation of Morris, as a Director and as an Officer of the corporation.

4



10.    <u>Indemnification By Sellers</u>. Sellers shall indemnify Buyer on or after the closing with regard to any claim, action, demand, loss, cost, expense, liability, penalty or damages, including reasonable attorney fees and other costs and expenses reasonably incurred in investigating or in attempting to avoid or oppose the imposition of damages or in enforcing this indemnity, resulting to Buyer from any of the following:

a.    The failure of Sellers to deliver his Stock Certificates at the closing;

b.    Any inaccurate representation made by Sellers pursuant to this Agreement;

c.    Breach of any of the warranties made by Sellers pursuant to this Agreement;

d.    Breach by Sellers of any of the obligations to be performed by them under this Agreement;

e.    All debts, liability and obligations of the Corporation not incurred in the ordinary course of business and known to Sellers and not know to Buyer at the time of Closing;

11.    <u>Indemnification by Buyer and Hots</u>. Hots and Buyer hereby indemnify and hold Morris harmless form any and all claims, actions, demands, loss, expenses, liabilities, penalties or damages, for all current debts and obligations of which Buyer is aware.  Further, Hots and Buyer hereby indemnify and hold Morris harmless, from the date of closing, for all future debts, claims, action, demands, losses, expenses, liabilities, penalties, damages, debts, obligations and all State, Federal and Local taxes, incurred by Buyer, or Hots.

12.    <u>Verification of Payment of Taxes</u>. Sellers represent that they will have paid all unemployment, sales, FICA, SBT, Federal, State and local income taxes, real estate and personal property taxes incurred in the operation of the business up to and through the date of closing.

5

Sellers further agree to deliver to Buyer clearances from all taxing authorities or, in lieu thereof, copies of final tax returns and cancelled checks verifying payment of all such taxes.

13.   Contingency Clause.  It is hereby acknowledged that all the terms and conditions of this Agreement are contingent upon the consent of the Michigan Liquor Control Commission to the Buyer becoming a new shareholder in the Hots.  Buyer will pay the cost of any applicable inspection or transfer fees related thereto.

In the event that this contingency is not met, then any down payments that Buyer may have furnished to Sellers shall immediately be refunded to Buyer, and this Agreement shall be null and void, and the Buyer shall have no claim or interest in the aforesaid stock.

14.   Failure to Satisfy Conditions Precedent.  If any of the conditions precedent to Buyer's obligations herein as described shall not be satisfied as of the closing date, Buyer may, in addition to its other rights and remedies, (a) terminate this Agreement, or (b) waive such default and proceed with the performance of this Agreement.  Any such termination or waiver shall be without prejudice to Buyer's other rights and remedies arising form the default.

15.   Time of the Essence.  Time shall be deemed of the very essence of this Agreement.

16.   Entire Agreement.  This Agreement sets forth the entire understanding of the parties and it may not be changed except by a written document signed by all parties hereto.

17.   Binding Effect.  This Agreement shall be binding upon and inure to the benefit of and be enforceable by the legal representatives, assignees, heirs, executors or administrators of the parties hereto.

IN WITNESS WHEREOF, the parties have hereunto signed this Agreement the day and year first above set forth.

6

MORRIS:

William W. Morris

HOTS:
HOTS, INC., a Michigan Corporation

By: _____
        William W. Morris
Its:    President

BUYER:
HOA ENTERPRISES, INC.,
a Michigan Corporation

By: _____
        Stephen J. Pitts
Its:    President

Prepared in the Offices of:
SCHROEDER, DeGRAW, KENDALL,
MAYHALL, DeGRAW & DICKERSON, PLLC
By:  Donald N. Dickerson
203 E. Michigan Avenue
Marshall, Michigan 49068
(269) 781-9651

7



5-18

## STOCK SALES AGREEMENT

THIS AGREEMENT, made and entered into this 24th day of September, 2007, by and between **WILLIAM W. MORRIS**, of 544 W. Columbia Avenue, Suite B, Battle Creek, Michigan 49015, ("Seller"), and **HOTS, INC., a Michigan corporation**, of 544 W. Columbia Avenue, Suite B, Battle Creek, Michigan 49015, ("Corporate Seller"), both hereinafter referred to as collectively as "Sellers", and **STEPHEN J. TITUS**, of 365 Avenue A, Battle Creek, Michigan 49015, hereinafter referred to as "Buyer".

WHEREAS, Seller is currently the owner of one hundred (100) shares of common stock of Corporate Seller, represented by Certificate No. 1, dated October 30, 2002, hereinafter referred to as the "Stock", and

WHEREAS, Corporate Seller is currently the owner of an on-premises, Class-C, SDM Michigan Liquor License, with Sunday sales and dance/entertainment and topless activity permits, and

WHEREAS, Corporate Seller is currently the owner of the business, equipment and inventory commonly known as Hots, located at 948 N. Raymond Road, Battle Creek, Michigan 49014, and

WHEREAS, Seller desires to sell his Stock to Buyer, and Buyer desires to purchase Seller's Stock.

NOW, THEREFORE BE IT AGREED AS FOLLOWS:

1.    Sale of Stock.   Seller shall all of his Stock, and Buyer shall buy of Seller's Stock, for the sum of Fifty Thousand and 00/100 Dollars ($50,000.00).

2.    Sale of Business.   In conjunction with the sale of the Stock to Buyer, Seller's will cooperate and shall sell to Buyer, free from all liabilities and encumbrances, except as herein and

1

specifically provided, the business known as "Hots", located at 948 N. Raymond Road, Battle Creek, Michigan, 49014, which business is engaged in the tavern and grill/restaurant/topless business.

3.     Assets Included in the Sale. Included as part of the consideration for the purchase price are the following assets:

A.     All of Seller's Stock in the corporation known as Hots, Inc.

B.     All equipment, furniture, furnishings, advertising materials, tools and supplies specified on Schedule A, attached hereto; said property being sold in "as is" condition.

C.     Liquor, beer, wine, unopened food items, and other inventory on hand at the time possession is delivered to Buyer.

D.     Goodwill.

4.     Purchase Price. The purchase price to be paid by Buyer to Seller shall be as follows: Fifty Thousand and 00/100 Dollars ($50,000.00), plus the cost value of alcoholic and non-alcoholic inventory on hand at the time possession is delivered to Buyer. Physical inventory of said personalty shall be taken by the parties hereto at least twenty-four (24) hours prior to the time of closing, as hereinafter set forth.

5.     Payment of Purchase Price. Consideration for this Agreement shall be the mutual promises of the parties hereto, and the purchase price shall be paid in the following manner: Buyer agrees to pay the sum of One Hundred and 00/100 Dollars ($100.00) on or before the date hereof, receipt of which is hereby acknowledged. The balance of the purchase price is Forty-Nine Thousand Nine Hundred and 00/100 Dollars ($49,900.00), together with interest from the date on the whole sum from time to time remaining unpaid at the rate of eleven percent (11%) per annum, shall be paid as follows: Four Hundred Seventy-Five and 21/100 Dollars ($475.21)

2

or more one (1) month from the date of closing and a like amount of Four Hundred Seventy-Five and 21/100 Dollars ($475.21) on the same date of each and every month thereafter. Interest accrued on all sums from time to time unpaid to be first deducted from the payment, and the balance of payment applied upon principal. To the contrary notwithstanding, the entire principal balance, plus accrued interest, shall be due and payable three (3) years from the date of closing.

The unpaid portion of the purchase price shall be represented by a Promissory Note and secured by a money purchase lien on the personalty, equipment, and non-alcoholic inventory, covering both present and after-acquired property, with provision that personalty thereunder shall not be sold by Buyer unless with permission of Seller, as replacement or within the normal course of business activity, a conditional assignment of lease, a stock pledge, and a conditional assignment of liquor license, all of which documents to be executed on the date of closing.

6.    Inventory.  Inventory shall be taken by Sellers and Buyer, at least twenty-four (24) hours prior to the date of closing. Cost values shall be used for the purchase price of inventory and Sellers and Buyer shall agree upon the cost value.

7.    Possession.  Possession of said business and the items of personalty shall be delivered to Buyer on the date of closing, as hereinafter defined. However, the business shall remain closed from the parties taking of inventory immediately prior to the closing and remain closed until all licenses have been transferred and the Michigan Liquor Control Commission approves the opening of the business by Buyer.

8.    Closing.  The closing of the transaction shall take place on or before twenty (20) days after the Michigan Liquor Control Commission discloses that it will approve the transfer of the Class C (with Sunday sales) and SDM licenses to Corporate Buyer, provided, however, that

3

the closing will take place on or before February 15, 2008. The parties may mutually agree to extend said closing date. The closing shall take place at the law offices of Schroeder, DeGraw, Kendall, Mayhall, DeGraw & Dickerson, PLLC, 203 East Michigan Avenue, Marshall, Michigan. The exact closing date shall be determined by the Buyer so long as it is before this date. Notice shall be given to Sellers at least ten (10) days before the proposed date of closing as to the time closing.

At the time of closing, the Sellers shall execute and deliver to Buyer such Bill of Sale and UCC Bulk Sales Affidavit and other instruments as may prove necessary to transfer to Buyer the business herein described and shall deliver possession thereof to Buyer. The Bill of Sale and other instruments will contain the usual warranties in an affidavit of title to effectively transfer to Buyer full title to the business herein referred to, free and clear of all liens, encumbrances, claims or liabilities of any nature whatsoever, except as herein specified.

9.    <u>Representation by Sellers</u>. Sellers warrant and represent the following:

a.    That Sellers are the owners of and have good and marketable title to all the business assets and real estate to be sold under this Agreement, free and clear of all encumbrances, liens, claims or liabilities of any nature whatsoever, except as herein otherwise specified.

b.    They have paid, or will pay, all Federal, State and local income, profit, sales, use, occupation, property, excise, social security, unemployment compensation, and other taxes to date.

c.    They have entered into no contract to sell or mortgage the business or any portion thereof.

4

d.    They have entered into no contracts relating to the business, except in the ordinary course of business.

e.    There are no judgments, liens, actions, or proceedings pending against them in any Court.

10.    <u>Covenants of Sellers</u>.  The Sellers covenant to the best of their knowledge with Buyer as follows:

a.    The Bill of Sale to be delivered at the closing will transfer all of the assets herein enumerated, free from all encumbrances except as herein stated, and will contain the usual warranties in an affidavit of title.

b.    The business of Sellers has been and will be conducted up to the date of closing in accordance with all laws, rules and regulations of the Federal, State and local governments.

c.    All Federal, State and local income, profit, franchise, sales, use, occupation, property, excise, social security, unemployment compensation and other taxes to date of closing shall be paid by Sellers.

d.    Simultaneously herewith, Sellers will submit to Buyer a verified list of the names, addresses and amounts of indebtedness to each of its creditors.

e.    No judgments, liens, encumbrances, claims or liabilities of any nature whatsoever will be outstanding at the time of the closing, against Sellers or against the business to be sold to Buyer, as hereinabove set forth.

f.    The Sellers will employ all actions necessary to effectively obtain for Buyer the assignments of interest in the Class C (all permits) and any SDM or SDD Licenses, pursuant to the dictates and approval of the Michigan Liquor Control Commission.

5

g.    From the date of this Agreement until the closing date:

(1)    Sellers will continue to maintain all the property herein sold in its present condition.

(2)    Sellers shall continue to maintain in full force and effect all policies of insurance in effect on the date of this Agreement, and the risk of loss between the date hereof and the date of closing shall be borne by Sellers.

(3)    Sellers will give to Buyer and its representative full access to all of the property herein sold and to all the Sellers' records and affairs pertinent to the current operation of Sellers' business in Calhoun County, Michigan.

11.    <u>Verification of Payment of Taxes</u>.  Sellers represent that they will have paid all unemployment, sales, FICA, SBT, Federal, State and local income taxes, real estate and personal property taxes incurred in the operation of the business up to and through the date of closing. Sellers further agree to deliver to Buyer clearances from all taxing authorities or, in lieu thereof, copies of final tax returns and cancelled checks verifying payment of all such taxes.

12.    <u>Representations by Buyer</u>.   The Buyer represents and warrants the following:  It has inspected and is familiar with the premises, with the physical condition of all the fixtures and equipment listed herein and agrees to accept said real estate building and lot, furniture, fixtures, tools, supplies and equipment in their present "as is" condition in full compliance with the terms and conditions of this Agreement.  Buyer covenants that it will not cause any liens to be placed against said realty or business, unless purely of a purchase-money variety.

13.    <u>Contingency Clause</u>.  It is hereby acknowledged that all the terms and conditions of this Agreement are contingent upon the consent to the transfer by the Michigan Liquor Control Commission of the Class C (with Sunday sales) Liquor License, all permits currently in

6

place, and the SDM or SDD "take-out" Licenses, if any, from Sellers to Buyer, on or before the closing date. Buyer will pay the cost of any applicable inspection or transfer fees related thereto.

In the event that this contingency is not met, then any down payments that Buyer may have furnished to Sellers shall immediately be refunded to Buyer, and this Agreement shall be null and void, and the Buyer shall have no claim or interest in the aforesaid business.

14,   <u>List of Creditors</u>.  The Sellers have furnished to Buyer, in accordance with the requirements of the Uniform Commercial Code, a list of existing business creditors, if any, signed and sworn to by the Sellers containing the names and business addresses of all the existing creditors of the Sellers, with the amount due to each creditor, also, the names of all persons who are known to Sellers to assert claims against it, even though such claims are disputed.

The Sellers understand that, in accordance with the provisions of the Uniform Commercial Code, the Buyer may deliver or send appropriate notice to all persons shown on the list of creditors furnished by the Sellers and to other persons, if any, who are known to Buyer to hold or assert claims against the Sellers. The Sellers will cooperate with Buyer to satisfy the statutory provisions in this regard.

15.   <u>Conditions Precedent to Buyer's Obligation on Closing Date</u>.  Each and every obligation of Buyer to be performed on or before the closing date shall be subject to the satisfaction, prior to, or concurrently with, the performance of such obligation, the following conditions precedent:

a.   The agreements, representations and warranties made by Sellers in this Agreement shall each be true and correct and the same in all respects on, as of, and with respect

7

to the closing date with the same force and effect as though they had been made or given on, as of, and with respect to the closing date.

b.    The property shall not have been materially and adversely affected as of the closing date in any way as a result of fire, explosion, disaster, accident, labor dispute, or any change in law, rule, regulation or ordinance, requisition or taking by the United States or any other governmental authority, civil disturbance, activity, or armed forces, act of God or of the public enemy or any other similar event.

c.    Sellers shall have performed and complied with all their obligations under this Agreement which are to be performed or complied with by them prior to or on the closing date, as the case may be.

d.    All proceedings to be taken in connection with the transactions contemplated by this Agreement, and all documents incident thereto, shall be reasonably satisfactory in form and substance to Sellers' and Buyer's counsel.

16.    <u>Failure to Satisfy Conditions Precedent</u>.  If any of the conditions precedent to Buyer's obligations herein as described shall not be satisfied as of the closing date, Buyer may, in addition to its other rights and remedies, (a) terminate this Agreement, or (b) waive such default and proceed with the performance of this Agreement.  Any such termination or waiver shall be without prejudice to Buyer's other rights and remedies arising form the default.

17.    <u>Property Taxes</u>.  All personal property taxes for current, calendar or fiscal years on the property herein sold by Sellers to Buyer shall be prorated as of the closing date.  The taxes assessed the personal property for the 2006 calendar year shall be used in arriving at the sums to be paid by Sellers at the time of closing.  Sellers shall pay that portion of the total that bears the same ratio as the number of days in the year of closing prior to closing bears to 365 days.

8

18.    Time of the Essence.    Time shall be deemed of the very essence of this Agreement.

19.    Entire Agreement.    This Agreement sets forth the entire understanding of the parties and it may not be changed except by a written document signed by all parties hereto.

20.    Binding Effect.    This Agreement shall be binding upon and inure to the benefit of and be enforceable by the legal representatives, assignees, heirs, executors or administrators of the parties hereto.

IN WITNESS WHEREOF, the parties have hereunto signed this Agreement the day and year first above set forth.

SELLER:

_____
William W. Morris

CORPORATE SELLER:
HOTS, INC., a Michigan Corporation

By:    _____
       William W. Morris
Its:   President

BUYER:
HOA ENTERPRISES, INC.,
a Michigan Corporation

By:    _____
       Stephen J. Titus
Its:   President

Prepared in the Offices of:
SCHROEDER, DeGRAW, KENDALL,
MAYHALL, DeGRAW & DICKERSON, PLLC
By: Donald H. Dickerson
203 E. Michigan Avenue
Marshall, Michigan 49068
(269) 781-9851

9

## PROMISSORY NOTE

**$49,900.00**

**Battle Creek, Michigan**
**April _24_, 2009**

      **FOR VALUE RECEIVED, Stephen Titus**, of Battle Creek, Michigan ("Borrower"), promise to pay to **William Morris**, of Battle Creek, Michigan, ("Lender"), the principal sum of Forty Nine Thousand Nine Hundred Dollars ($49,900.00), together with interest, in lawful money of the United States, in the manner provided below.

      Payment shall commence October 24, 2007 in the amount of Four Hundred Seventy Five Dollars and 21/100 ($475.21) and shall continue on the same day each month thereafter for an additional 35 months. After thirty six payments have been made, the entire remaining balance shall become due and owing. The unpaid principal balance of this Promissory Note ("Note") shall bear simple interest at the rate of 11.0 % percent per annum.

      This Note may be paid in full or in part at any time without payment of any prepayment fee or penalty. All payments received hereunder shall first be applied against accrued and unpaid interest and the balance against principal. Borrower expressly assumes all risks of loss or delay in the delivery of any payments made by mail, and no course of conduct or dealing shall affect Borrower's assumption of these risks.

      If suit or action is instituted to collect the indebtedness evidenced by this Note, or any part thereof, or if the holder hereof takes any other action for collection, With respect to any such action, venue shall be in Calhoun County, Michigan.

      Time is of the essence with respect to Borrower's obligations under this Note.

      This Note shall be construed and governed in accordance with the laws of the State of Michigan. The obligations of the Borrower hereunder shall be binding on Borrower and his successors and assigns, and shall inure to the benefit of Lender and his successors and assigns.

Date: April _24_, 2009

                              **Stephen Titus**



EXHIBIT

C

# ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (the "**Agreement**"), is made this ~~February~~ *March* **25**, 2013, by and between **STEPHEN L. LANGELAND**, Chapter 7 Trustee in the matter of William W. Morris and Jacqueline L. Morris, Debtors, Case No: 11-07682 swd, United States Bankruptcy Court for the Western District of Michigan, and not individually, whose address is 6146 West Main Street Ste. C, Kalamazoo, Michigan 49009 (the "**Seller**"), and HATS, LLC, a Michigan limited Liability Corporation, whose address is 110 Knapp Drive, Suite 114, Battle Creek, MI 49015 (the "**Buyer**").

## FACTS

A.    Seller claims that the bankruptcy estate being administered by Seller in the matter of William W. Morris and Jacqueline L. Morris, Debtors, Case No: 11-07682 swd, United States Bankruptcy Court for the Western District of Michigan (the "**Bankruptcy**") includes (a) a claimed interest in or the right to payments due under a land contract dated September 24, 2007, as amended March 21, 2010, and March 23, 2011, between HOTS, Inc. ("**HOTS**") as vendor and HOA Enterprises, Inc. ("**HOA**") as purchaser (the "**Land Contract**") for sale of the real property commonly known as 948 N. Raymond Road, Battle Creek, Michigan 49014 (the "**Property**"), situated in the Township of Emmett, Calhoun County, Michigan, and a claimed interest in the Property, (b) a cause of action to reform the Land Contract to require payments due under the Land Contract to be paid by HOA to the Trustee (the "**Cause of Action**"), and (c) all of the Trustee's right, title and interest, including but not limited to the right to receive payments due, under a stock sales agreement dated September 24, 2007 (the "**Sale Agreement**") between William W. Morris and HOTS as the sellers and Stephen J. Titus as the buyer (collectively, the "**Interest**").

B.    The Property is described as follows:

Parcel 1:  Commencing at a point on the Southeasterly line of Raymond Road, distant South 33° West 416.6 feet from the Southwest corner of Lot 1, Block 1 of the recorded Plat of Brownlee Park; thence South 77°40' East 132 feet; thence North 33° East 60 feet; thence South 77°40' East 168 feet; thence South 33° West 120 feet; thence North 77°40' West 300 feet to the Southeasterly line of Raymond Road; thence North 33° East 60 feet to the Place of Beginning, being on the Southeast 1/4, of Section 5, Town 2 South, Range 7 West, Township of Emmett, Calhoun County, Michigan.

Parcel 2:  Also: All that part of the Southeast 1/4 of Section 5, Town 2 South, Range 7 West, Township of Emmett, Calhoun County, Michigan, described as follows: Beginning at a point on the East line of said section distant 659.26 feet North of the South line of said section; thence North 77°40' West 176.55 feet; thence North 33° East parallel with and distant 280.7 feet measured at right angles from the Easterly line of Raymond Road 120 feet; thence South 77°40' East 107.9 feet to the East line of said section; thence South 00°51' East along said section line 115.32 feet to the Place of Beginning.

Parcel 3:  Part of the Southeast 1/4 of Section 5, Town 2 South, Range 7 West, Emmett Township, Calhoun County, Michigan, described as: Beginning at a point on the Southeasterly

line of Raymond Road, distant South 33° West 336.6 feet from the Southwest corner of Lot 1, of the recorded Plat of Brownlee Park; thence continuing South 33° West, 80.00 feet along said Southeasterly line of Raymond Road; thence South 77°40' East, 132 feet; thence North 33° East, 60 feet; thence South 77°40' East 168 feet; thence North 74°00'42" West 293.54 feet to the Place of Beginning.

P.P. No.: 13-10-005-004-01

        C.     Seller has agreed to sell and Buyer has agreement to purchase the Interest, subject to the terms and conditions of this Agreement.

## AGREEMENTS

The parties agree as follows:

       1.    **Sale and Purchase.**  Seller agrees to sell to Buyer and Buyer agrees to purchase from Seller the Interest.

       2.    **Purchase Price.**  Buyer agrees to pay to Seller the amount of $40,000.00 (the **"Purchase Price"**) for the Interest.  The Purchase Price must be paid at Closing by certified check or other immediately available funds.

       3.    **Deposit.**  Buyer must deposit with Seller the amount of $2,000.00 (the **"Deposit"**) to assure Buyer's performance of this Agreement.  The Deposit will be applied on the Purchase Price at Closing.  If after Seller has filed a motion in the Bankruptcy to approve this Agreement the Closing fails to occur, the Deposit will be retained by Seller and will not be refunded to Buyer for any reason other than the default of Seller in performing this Agreement, as it may be amended.  In the event of a breach of this Agreement by the Buyer, the Deposit shall constitute Seller's liquidated damages.

       4.    **Hearing.**  Seller's and Buyer's obligations under this Agreement, as it may be amended, are contingent on approval of this Agreement, as it may be amended, by the United States Bankruptcy Court for the Western District of Michigan (the **"Closing Contingency"**) at a hearing in the Bankruptcy noticed out to all creditors and other parties in interest (the **"Hearing"**).

       5.    **Place and Date of Closing.**  The purchase and sale contemplated by this Agreement (the **"Closing"**) must take place immediately following the Hearing.  The date of Closing is referred to as the **"Closing Date."**

       6.    **Deliveries at Closing.**

         (a)    **Seller's Deliveries.**  At the Closing, the Seller must execute and/or deliver, or cause to be executed or delivered, an assignment, quit claim deed and/or trustee's bill of sale, as requested by the Buyer and acceptable to the Seller (the **"Conveyance Documents"**), transferring, conveying and assigning the Interest to Buyer.

2

(b)    **Buyer's Deliveries.**  At the Closing, Buyer must deliver the Purchase Price in certified funds or other immediately available funds.

(c)    **Further Actions.**  Buyer and the Seller must take all further actions and execute and deliver any additional agreements, certificates, instruments, and other documents on or after the Closing as Buyer and the Seller deems reasonably necessary to effectuate the transactions contemplated by this Agreement.

7.    **Representations and Warranties of Seller.**  Sale of the Interest will be made on an "**AS IS, WHERE IS**" basis as of the Closing Date, without representation or warranty, express or implied of any kind, nature, or description, including without limitation any warranty of title, any warranty as to the amount due under the terms of the Land Contract or the Sale Agreement, or as to the condition, usability or value of the Interest for any purpose. The Seller will not be required to inspect or test or report on the condition of the Property, or the operability of the Property, or the existence of any defects in the Property. The Trustee takes no position on whether HOTS or William W. Morris is entitled to the payment under the Land Contract, and is simply selling the Interest, to whatever extent the estate has an interest in the Interest.

8.    **Buyer's Representations and Warranties.**  Buyer represents and warrants to the Seller as follows:

(a)    **Buyer's Organization and Good Standing.**  Buyer is duly organized, validly existing, and in good standing under the laws of the State of Michigan.

(b)    **Enforceability.**  Buyer has full capacity, power, and authority to enter into this Agreement and to carry out the transactions contemplated by this Agreement, and this Agreement is binding upon Buyer and is enforceable against Buyer in accordance with the terms of this Agreement.

(c)    **Brokers.**  Buyer has not retained or employed any broker, finder, or other person, or taken any action, or entered into any agreement or understanding that would give any broker, finder, or other person any valid claim against Seller for a commission, brokerage fee, or other compensation.

(d)    **Acknowledgments.**   BUYER ACKNOWLEDGES AND AGREES THAT BUYER AND ITS REPRESENTATIVES HAVE THE EXPERIENCE AND KNOWLEDGE TO EVALUATE THE INTEREST; THAT BUYER AND ITS REPRESENTATIVES, BEFORE THE CLOSING DATE, WILL HAVE HAD ACCESS TO SUCH OF THE INFORMATION AND DOCUMENTS AS BUYER AND ITS REPRESENTATIVES HAVE REQUESTED TO SEE AND/OR REVIEW; THAT BUYER AND ITS REPRESENTATIVES HAVE HAD A FULL OPPORTUNITY TO MEET WITH APPROPRIATE AGENTS OF SELLER TO DISCUSS THE INTEREST; AND THAT, IN DETERMINING TO ACQUIRE THE INTEREST, BUYER HAS MADE ITS OWN INVESTIGATION INTO, AND BASED ON THAT

3

INVESTIGATION BUYER HAS MADE ITS OWN INDEPENDENT JUDGMENT CONCERNING, THE INTEREST.

9. **Termination Events.** This Agreement may, by notice given before or at the Closing, be terminated:

(a) **Material Breach.** By Buyer or the Seller if a material breach of any provision of this Agreement has been committed by the other party and the breach has not been waived (provided that the terminating party is not then in material breach of any provision of this Agreement).

(b) **Closing Contingency.** The Closing Contingency fails to be satisfied.

(c) **Mutual Consent.** By mutual consent of Buyer and the Seller.

(d) **Failure to Close.** By either Buyer or the Seller if the Closing has not occurred (other than through the failure of any party seeking to terminate this Agreement to comply fully with that party's obligations under this Agreement) on or before the required Closing Date, or any later date as the parties may mutually agree.

10. **Termination Procedure.** If this Agreement is terminated pursuant to *Section 9* above, the party or parties so electing to terminate must give written notice to that effect to the other party, and this Agreement will terminate and the transactions contemplated by this Agreement will be abandoned without further action by either party.

11. **Effect of Termination and Breach of Agreement.** If this Agreement is terminated, the parties will have no further duties, obligations, or rights to or against each other.

12. **Survival of Representations, Warranties, Covenants, and Indemnities.** All representations, warranties, and covenants made by any party to this Agreement will survive the Closing and any investigation at any time made by or on behalf of any party before or after the Closing.

13. **Assignment and Benefits.** No party to this Agreement may assign or transfer this Agreement without the prior written consent of the other party to this Agreement. Any assignment of the obligations of this Agreement will not release the assignor from the duty to perform that person's obligations under this Agreement. This Agreement will be binding upon, inure to the benefit of, and be enforceable by and against the respective successors and permitted assigns of each of the parties to this Agreement.

14. **Notices.** All notices, requests, demands, and other communications under this Agreement must be in writing and will be deemed to have been duly given when delivered personally, or sent by facsimile or electronic mail, or sent by express delivery service with charges prepaid and receipt requested, or, if those services are not reasonably available, mailed (postage prepaid) by certified mail with return receipt requested, to the parties at their addresses specified in the first paragraph of this Agreement. Notices to Seller must be sent to:

Stephen L. Langeland
6146 West Main Street Ste. C
Kalamazoo, Michigan 49009
Telephone: (269) 382-3703
Email: stepenlangeland@earthlink.net

and

Timothy Hillegonds
Warner Norcross & Judd LLP
900 Fifth Third Center, 111 Lyon Street NW
Grand Rapids, MI 49503
Telephone: (616) 752-2132
Email: thillegonds@wnj.com

Notices to Buyer must be sent to:

_____

_____

_____

15.    **Expenses.**  Buyer and the Seller will each bear their own respective expenses incurred in connection with the transactions contemplated by this Agreement, including, without limitation, expenses of legal counsel, accountants and other advisors, incurred at any time in connection with the negotiation, preparation, execution, and delivery of this Agreement, and the consummation of the transactions contemplated by this Agreement.

16.    **Entire Agreement.**    This Agreement contains the entire agreement and understanding of the parties and supersedes all prior agreements, negotiations, arrangements, and understandings relating to the subject matter of this Agreement.

17.    **Amendments and Waivers.**    This Agreement may be amended, modified, superseded, or canceled, and any of the terms, covenants, representations, warranties, or conditions of this Agreement may be waived, only by a written instrument signed by each party to this Agreement or, in the case of a waiver, by or on behalf of the party waiving compliance. The failure of any party at any time to require performance of any provision in this Agreement will not affect the right of that party at a later time to enforce that or any other provision. No waiver by any party of any condition, or of any breach of any term, covenant, representation, or warranty contained in this Agreement, in any one or more instances, will be deemed to be a further or continuing waiver of any condition or of any breach of any other term, covenant, representation, or warranty.

18.    **No Third-Party Beneficiaries.**    The provisions of this Agreement are solely between and for the benefit of the respective parties to this Agreement, and do not inure to the benefit of, or confer rights upon, any third party.

5

19.   **Headings.** The headings of the sections and subsections of this Agreement have been inserted for convenience of reference only and must not restrict or modify any of the terms or provisions of this Agreement.

20.   **Governing Law.** This Agreement is and will be governed by, and interpreted and enforced in accordance with, the laws of the State of Michigan, as applied to contracts made and to be performed in that state, without regard to conflicts of law principles.

21.   **Construction.** The language used in this Agreement is deemed to be the language chosen by the parties to express their mutual intent, and no rule of strict construction will be applied against any party by virtue of having drafted this Agreement or any provision of it. Unless otherwise expressly provided, the words "include" and "including" (and variations of those words) whenever used in this Agreement will not limit the preceding words or terms.

22.   **Counterparts.** This Agreement may be signed in original or by fax or email in counterparts, each of which will be deemed to be an original, and the counterparts will together constitute one complete document.

**BUYER:**                                    **SELLER:**

_____         _____
                                              **STEPHEN L. LANGELAND,** Chapter 7 Trustee
                                              in the matter of William W. Morris and Jacqueline
                                              L. Morris, Debtors, Case No: 11-07682 swd, United
                                              States Bankruptcy Court for the Western District of
                                              Michigan, and not individually

By _____

Its _____

8909822-1

6

19.     **Headings.**  The headings of the sections and subsections of this Agreement have been inserted for convenience of reference only and must not restrict or modify any of the terms or provisions of this Agreement.

20.     **Governing Law.**  This Agreement is and will be governed by, and interpreted and enforced in accordance with, the laws of the State of Michigan, as applied to contracts made and to be performed in that state, without regard to conflicts of law principles.

21.     **Construction.**   The language used in this Agreement is deemed to be the language chosen by the parties to express their mutual intent, and no rule of strict construction will be applied against any party by virtue of having drafted this Agreement or any provision of it.  Unless otherwise expressly provided, the words "include" and "including" (and variations of those words) whenever used in this Agreement will not limit the preceding words or terms.

22.     **Counterparts.**  This Agreement may be signed in original or by fax or email in counterparts, each of which will be deemed to be an original, and the counterparts will together constitute one complete document.

**BUYER:**

Hals LLC

By _____ William Morris

Its Authorized Signator

**SELLER:**

STEPHEN L. LANGELAND, Chapter 7 Trustee in the matter of William W. Morris and Jacqueline L. Morris, Debtors, Case No: 11-07682 swd, United States Bankruptcy Court for the Western District of Michigan, and not individually

30009822-1

6